AMY JANE LONGO (Cal. Bar No. 198304)
Email: longoa@sec.gov
JANET RICH WEISSMAN (Cal. Bar No. 137023)
Email: weissmanj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:21-cv-7339 |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| SHE BEVERAGE COMPANY, INC., LUPE L. ROSE, SONJA F. SHELBY AND KATHERINE E. DIRDEN, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## <u>JURISDICTION AND VENUE</u>

1.      The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2.      Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because Defendants Lupe Rose, Sonja Shelby and Katherine Dirden reside in this district, and Defendant SHE Beverage Company, Inc. has its principal place of business in this district.

## SUMMARY

4.      This civil enforcement action involves an offering fraud perpetrated by Defendants SHE Beverage Company, Inc. ("SHE Beverage") and its principals Lupe L. Rose, Sonja F. Shelby and Katherine E. Dirden.  Located in Lancaster, California, SHE Beverage produces beverages targeting female customers.  Between 2017 and 2019, SHE Beverage raised over $15 million from unregistered stock sales to more than 2,000 investors from across the country.  SHE Beverage and its principals falsely represented to investors that they would use 30% of the offering proceeds to purchase beverage inventory.  In fact, they spent only approximately 2% of the monies they raised on beverages.  In the meantime, they misappropriated roughly half the offering proceeds—at least $7.5 million—in cash withdrawals and to pay personal expenses such as cars and trucks, rent, luxury retail goods, and trips to casinos.

5.      Defendants carried out their aggressive fund-raising by falsely promoting the company as being successful in a variety of ways.  Defendants overstated and mischaracterized the revenues earned by the company since its

inception.  Defendants claimed the company had launched its own brewery, whereas it had not even completed its construction.  They falsely touted the company's bottled water as "proprietary" and "FDA approved," when it was neither.  Defendants claimed the company had received acquisition offers in the hundreds of millions of dollars; in reality, it had no such offers.  The principals claimed to have millions of their own money invested in the company, whereas their investments were much more modest.  They frequently represented that the company's planned initial public offering ("IPO") was imminent, when they had not yet even filed a registration statement with the SEC.  They touted the acquisition of a cannabis-related company, concealing that it was obtained from affiliates (sisters of one of the Defendants) with no independent valuation, and had no operations or sales.

6.    SHE Beverage's fraudulent stock offering was not registered with the SEC; thus investors lacked important information about the company's financial condition.  Defendants raised money from thousands of investors in numerous states, including from unaccredited investors.  The company engaged in general solicitation over the internet and solicited investors to deposit by cash, checks, credit cards and electronic payment processor, at times offering referral, two-for-one, and other bonuses, and frequently hyping investors' last chance to invest pre-IPO.  The only Form S-1 registration statement ever filed by the Defendants, in January 2020, never went effective and was declared abandoned in 2021.

7.    By their conduct, Defendants violated Sections 5 and 17(a) of the Securities Act, 15 U.S.C. §§ 77(e)(a), 77(e)(c), 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5(a)-(c).

8.    The SEC seeks findings that the Defendants committed these violations; permanent injunctions, disgorgement with prejudgment interest, civil penalties, and against Defendants Rose, Shelby, and Dirden, officer and director bars.

**THE DEFENDANTS**

9. **SHE Beverage Company, Inc.** ("SHE Beverage"), is a California corporation, which was incorporated in or about 2015, with its principal place of business in Lancaster, California.  SHE Beverage promotes itself primarily as a beverage company targeted at female consumers, along with several additional lines of business.  SHE Beverage has never been registered with the SEC in any capacity, has never had a class of securities registered with the SEC, and its securities have never been publicly traded.  SHE Beverage is controlled by Defendants Rose, Shelby and Dirden.

10. **Lupe L. Rose** ("Rose"), 52, lives in Palmdale, California and holds herself out as SHE Beverage's co-founder, owner, chief executive officer ("CEO"), president and chair of the board of directors.  Rose has never been registered with the SEC in any capacity and has never held any securities licenses.

11. **Sonja F. Shelby** ("Shelby"), 58, lives in Palmdale, California and holds herself out as SHE Beverage's co-founder, owner, vice president, treasurer, vice chair, chief financial officer ("CFO"), principal financial officer, and member of the board of directors.  Shelby has never been registered with the SEC in any capacity and has never held any securities licenses.

12. **Katherine E. Dirden** ("Dirden"), 46, lives in Lancaster, California and holds herself out as SHE Beverage's chief operations officer ("COO"), investor relations director, and a member of the board of directors.  Dirden has never been registered with the Commission in any capacity and has never held any securities licenses.

**THE ALLEGATIONS**

**A.    SHE Beverage and its Principals**

13. Rose and Shelby co-founded and began working on the concept for SHE Beverage in or around 2009; Rose subsequently incorporated SHE Beverage in or about 2015.

14.     In or around February 2016, SHE Beverage hired Dirden as its COO.

15.     SHE Beverage was promoted primarily as a women-owned beverage manufacturer, selling beer and other brewed drinks, wine, and bottled water, aimed at female consumers.

16.     SHE Beverage's offering documents identify Rose as the co-founder, owner, chief executive officer, president and chair of the board of directors.

17.     SHE Beverage's offering documents identify Shelby as the co-founder, owner, vice president, treasurer, vice chair, chief financial officer, principal financial officer, and member of the board of directors.

18.     SHE Beverage's offering documents identify Dirden as the chief operations officer, investor relations director, and a member of the board of directors.

19.     As its most senior executive, Rose had ultimate decision-making authority for SHE Beverage.  During the relevant period, Rose exercised day-to-day control over SHE Beverage, including meeting with beverage manufacturers, purchasing inventory, and marketing and delivering product.  Along with Shelby and Dirden, Rose was a member of SHE Beverage's three-person executive team.

20.     Although SHE Beverage identified her as the CFO and treasurer, Shelby's primary responsibilities during the relevant period were for human resources and other administrative duties.  Along with Rose and Dirden, Shelby was a member of SHE Beverage's three-person executive team.

21.     Dirden functioned as SHE Beverage's chief operating officer, including selling product and taking care of internal reporting systems.  During the relevant period, Dirden had primary responsibility for investor relations, including answering questions of prospective and actual investors about SHE Beverage's offering.  Along with Rose and Shelby, Dirden was a member of SHE Beverage's three-person executive team.

22.     Rose, Shelby and Dirden are all signatories on the company's bank accounts.

23.     SHE Beverage's website addresses during the relevant period included:

- http://www.shebeverages.com

  and

- http://sheinvestmentguide.com.

24.     During the relevant period, Defendants utilized the following email addresses:

- Rose: lupe@shebeverages.com, luperosetheceo@gmail.com,

- Shelby:  sonjashelby@yahoo.com, sonja@shebeverages.com, sshelby@sheverages.com,

      and

- Dirden:  kat@shebeverages.com.

**B.     Defendants' Offer and Sale of Securities**

25.     Between 2017 and 2019, SHE Beverage raised over $15 million from more than 2,000 investors nationwide.

26.     SHE Beverage issued securities in the form of shares of SHE Beverage.

27.     Investors purchased shares from SHE Beverage through a variety of means, including cashier's checks, personal checks, wires, credit cards, transactions through PayPal, cash or by deposits directly into SHE Beverage's bank account.

28.     SHE Beverage offered and sold securities using offering memoranda, investment guides, its websites, emails, and verbal communications.

29.     Between approximately October 2017 and mid-June 2018, SHE Beverage offered and sold its shares through an offering memorandum (the "2017 OM").

30.     SHE Beverage utilized an outside consultant to prepare the 2017 OM.

31.     The 2017 OM offered shares of SHE Beverage's common stock at $2.50 per share.

32.     The 2017 OM included a cover letter and subscription agreement.  The subscription agreement requested prospective investors to provide information as to

their status as an accredited investor.

33.    SHE Beverage provided the 2017 OM to prospective investors during in-person meetings.

34.    Beginning in or about mid-June 2018, SHE Beverage offered and sold stock to investors through a private placement memorandum dated June 20, 2018 (the "2018 PPM").

35.    Rose, Shelby and Dirden worked with an outside consultant to prepare the 2018 PPM.

36.    The 2018 PPM offered up to $25 million of SHE Beverage's common stock at $2.50 per share.

37.    The 2018 PPM stated that the shares were exempt from registration under Securities Act Sections 3(b), 4(2), and Rule 506 thereunder, and that prospective investors were required to meet "suitability standards" set forth in the 2018 PPM.

38.    SHE Beverage provided the 2018 PPM to prospective investors during in-person meetings or by email.

39.    Rose, Shelby and Dirden reviewed the 2018 PPM before it was provided to investors, including the disclosures on the use of proceeds.

40.    SHE Beverage also solicited investors using a 2018 SHE Beverage Investment Guide and Corporate Update (the "2018 Investment Guide").

41.    Rose created the 2018 Investment Guide and it was distributed at investor meetings along with the 2018 PPM.

42.    During SHE Beverage's offering, the 2018 PPM and the 2018 Investment Guide were available on SHE Beverage's websites.

43.    The 2018 Investment Guide included a "New Member Welcome Letter" signed by Rose, Shelby and Dirden.

44.    SHE Beverage also solicited investors using a 2019 SHE Brand Beverage Investment Guide (the "2019 Investment Guide").

45.     The 2019 Investment Guide was available on SHE Beverage's website from at least May 2019 to December 2019.

46.     Rose assisted with the preparation of the 2019 Investment Guide, and Rose and Dirden knew it was accessible on the company's website.

47.     SHE Beverage publicly offered its securities to investors through its websites through at least December 2019.

48.     SHE Beverage's website included a section titled "Why You Should Invest In Our Beverage Company" with a link to two letters from Rose, Shelby and Dirden.

49.     The SHE Investment Guide website promoted that the company was accepting investments and provided a link to the 2018 PPM.

50.     Beginning in or around December 2017 and throughout the offering, SHE Beverage sent email messages to existing investors approximately once a month.  The messages promoted additional investment in SHE Beverage and included information about SHE Beverage's securities offering.

51.     The investor email messages were formatted as letters to investors with signatures variously from "the SHE Beverage Team" or individually from Rose or Dirden.

52.     For example, in or around the end of December 2018, in an email to investors signed "SHE Beverage Executive Team," SHE Beverage promoted a "Limited Time Offer" to purchase two for one shares, noting that Rose, Shelby and Dirden wanted to "provide our current investors one final amazing opportunity" to invest at this price, through early January 2019.

53.     As another example, in one 2019 email signed by Rose, SHE Beverage promoted a "new minimum level of investment of $1,000 at $2.50 per share…[for] new and existing investors," and that investors could "invest an ADDITIONAL investment" of at least $1,000 to obtain a chance to win a free trip.

54.     In another email dated on or about April 24, 2019, signed by Rose, SHE

COMPLAINT                                    8

Beverage promoted the opportunity to "purchase at a discounted rate" and "refer friends and family."

55.     In another email dated on or around November 10, 2019, signed by Rose, SHE Beverage promoted the opportunity to invest $50,000 and receive "advisory board shares," stating, "can you imagine when we open larger or grow to 50 dollars a share?"

56.     In another email dated in or around 2019, Dirden wrote that SHE Beverage was "still fund-raising during this process so please continue to send us anybody interested in investing or if you'd like to add to you (*sic*) portfolio please feel free to do so," directing prospective investors to contact her with any questions.

57.     Rose approved the investor messages for distribution, and Dirden sent them out.

58.     Between approximately 2018 and 2019, SHE Beverage hosted three to four in-person investor meetings a year, attended by SHE Beverage's principals and prospective and actual investors.  Some investor meetings were streamed to out-of-town investors.

59.     With Shelby and Dirden in attendance, Rose ran the investor meetings and presented at them.

60.     At the investor meetings, SHE Beverage updated investors about the business and provided its beverage products for sampling.

61.     At the investor meetings, SHE Beverage made available its offering materials, including the 2018 PPM and the 2018 Investment Guide.

62.     During SHE Beverage's offering, Rose and Dirden each directly solicited investors.

63.     For example, on or about August 6, 2018, Rose hosted a "meet & greet" for new investors to discuss the Investment Guide.

64.     Dirden spoke to prospective and actual investors to answer questions about the offering, and was identified as the person to contact with inquiries.

65.    Defendants initially solicited friends and family to invest. Subsequently, they began soliciting friends and family of their investors, and engaged in a general solicitation of investors for SHE Beverage's offering.

66.    SHE Beverage offered referral bonuses, in the form of additional shares, for investors who brought in additional investors to SHE Beverage.

67.    SHE Beverage's offering was nationwide with more than 2,000 investors who live in at least 38 states, and Guam, Puerto Rico, and Washington, D.C.

## C.    Defendants' Fraudulent Scheme and Material Misrepresentations and Omissions

68.    SHE Beverage and its principals engaged in a scheme to defraud and made material misrepresentations and omissions to prospective and actual investors during the offering.

69.    SHE Beverage was the maker of the statements in its offering memoranda, investment guides, websites, press releases, and investor emails.

70.    As SHE Beverage's principals with day-to-day control over its operations and disclosures, Rose, Shelby, and Dirden were makers of the statements in SHE Beverage's offering memoranda, investment guides, websites, press releases, and investor emails.

71.    Rose, Shelby and Dirden each directly made and signed their names on statements to investors, including signing the investment guides, signing investor emails as the executive team, and for Rose and Dirden, signing investor emails individually.   Rose was also listed as the contact on SHE Beverage's press releases.

### 1.    Defendants' misuse and misappropriation of investor proceeds

72.    SHE Beverage and its principals misused investor proceeds by utilizing only 2% of investor funds to purchase beverage inventory, contrary to the disclosures in SHE Beverage's offering materials.

73.    Additionally, Defendants misappropriated investor funds by spending millions on personal expenses and cash withdrawals, far in excess of any disclosed

amounts of salary or compensation to the principals.

74.     SHE Beverage's 2017 OM represented that the "proceeds of the offering will be used for the Company's Business Plan and management has retained discretion to use the proceeds according to the Use of Proceeds of the Offering and for other related uses."

75.     The 2017 OM did not include either a business plan or a use of proceeds section, but described the business as "selling high quality beverages with a focus on elite branding and brand management."

76.     SHE Beverage's 2018 PPM included a use of proceeds section:

| USE OF PROCEEDS | | |
| --- | --- | --- |
| Amount | Item | Percentage |
| $12,500,000 | Working Capital/Operating Expenses | 50% |
| $7,500,000 | Inventory | 30% |
| $5,000,000 | Sales, Marketing, Salaries | 20% |
| **$25,000,000** | **Total** | **100%** |

77.     The 2018 PPM thus represented that approximately 30% of offering proceeds, or approximately $4.5 million (representing 30% of the offering proceeds actually raised), would be used on inventory.

78.     During SHE Beverage's offering, Defendants reiterated the intended uses of investor proceeds in other documents provided to investors.

79.     For example, the 2018 Investment Guide included descriptions of the company and its beverage products, stating that the company would "create an elite line that will not only dominate the Beverage Industry, but also change the way we drink one SIP at a time." The 2018 Investment Guide further stated that "owner funding and further investor generated cash flow will enable the expansion plan."

80.     Similarly, the 2019 Investment Guide featured descriptions of SHE Beverage's beverage products and explained that "the goal is to raise 1 billion dollars to grow the brand."

81.     Contrary to its representations to investors, between 2015 and 2021,

SHE Beverage spent only approximately $321,971 on beverage inventory, or approximately 2% of the offering proceeds, as follows:

(a)     from 2015 to 2019, SHE Beverage paid approximately $195,375 to three breweries to brew craft beer and hard punch for retail sale under the SHE Beverage brand name;

(b)     from 2018 to 2021, SHE Beverage paid approximately $71,550 to a California distributor for its proprietary alkaline, electrolyte, purified and spring bottled waters for retail sale under the SHE Beverage brand name;

(c)     in or around 2019, SHE Beverage paid approximately $26,007 to a Florida distributor for its CBD bottled water to sell under the SHE Beverage brand name; and

(d)     in or around 2019, SHE Beverage paid approximately $29,039 for a Lancaster winery to create a private-label rosé wine.

82.     Given the limited amounts spent on beverage inventory during the offering, Defendants' representations that they would use 30% of investor proceeds on inventory were materially false and misleading.

83.     Defendants did not disclose to investors that their purchases of inventory were materially lower than the offering materials represented.

84.     Reasonable investors would have found it important to their investment decision to know that Defendants were not purchasing the amounts of inventory the offering materials represented, which would necessarily impact the potential sales of SHE Beverage product.

85.     Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that SHE Beverage was misusing investor funds by not purchasing beverage inventory consistent with their representations to investors.

86.     In the alternative, Rose, Shelby and Dirden failed to exercise reasonable care as to SHE Beverage's use of investor funds, by not purchasing beverage inventory consistent with their representations to investors.

87.   Rose, Shelby and Dirden also misappropriated investor funds.

88.   The 2017 OM did not disclose that any proceeds would be used for executive compensation.

89.   The 2018 PPM represented that approximately 20% of the offering proceeds, or $3 million (representing 20% of the $15 million of offering proceeds actually raised), would be used for sales, salaries and marketing.

90.   However, between 2016 and 2021, Rose, Shelby and Dirden took out at least $7.5 million in investor proceeds, as follows:

(a)   approximately $6 million in cash withdrawals and transfers to Rose, Shelby and Dirden's personal bank accounts;

(b)   approximately $1.2 million spent at casinos;

(c)   approximately $180,000 to purchase 8 cars and trucks for personal use and for payment of a title loan on Shelby's Porsche;

(d)   approximately $100,000 in payments for the lease on the house occupied by Rose and Shelby; and

(e)   approximately $50,000 in purchases from luxury clothing retailers such as Gucci and Louis Vuitton.

91.   The amounts Rose, Shelby and Dirden received from the offering proceeds materially exceeded the amount allocated for the entire company's sales, salary and marketing expenses in the 2018 PPM.

92.   Investors were not told that SHE Beverage's principals would use investor money for their personal expenses.

93.   Reasonable investors would have found it important to their investment decision to know that SHE Beverage's principals used roughly half of all proceeds to pay their personal expenses and for cash withdrawals.

94.   Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that they were misappropriating investor funds.

95.   In the alternative, Rose, Shelby and Dirden failed to exercise reasonable

care as to their expenditures of investor funds.

**2.    Defendants falsely represented the amount of revenues earned from product sales**

96.    The 2018 PPM represented that "[t]he Company is a relatively new venture, which has generated approximately $4-5 million dollars in revenue and has an average profit margin of 40% across the span of its product lines."

97.    The product lines identified in the 2018 PPM were beer and bottled water.

98.    The PPM 2018 PPM did not identify events as a source of revenues.

99.    The statement that the company had generated $4-5 million dollars in revenue was false.

100.    As of the end of fiscal year 2018, SHE Beverage had sold less than $263,000 of merchandise.

101.    SHE Beverage's audited financial statements, disclosed for the first time to investors with the company's January 2020 Form S-1 filed with the SEC, stated that the company had only the following revenues as of December 31, 2017 and December 31, 2018:

| REVENUE | Year ended Dec. 31, 2018 | Year ended Dec. 31, 2017 |
|---|---|---|
| Event revenue | $1,628,875 | $1,569,690 |
| Merchandise revenue | $110,324 | $152,670 |
| Total revenue | $1,729,199 | $1,722,360 |

102.    The company did not have $4-5 million in revenues in 2018, and of the revenues it had, more than 90% was from event rentals, rather than any product sales.

103.    Reasonable investors would have found it important to their investment decision to know that SHE Beverage's revenues did not approach the $4-5 million described to investors, and that the revenues it did have came overwhelmingly from

events.

104.   Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that the company's statements of earned revenues were materially overstated and omitted the source of the majority of the company's revenues.

105.   In the alternative, Rose, Shelby and Dirden failed to exercise reasonable care as to their statements of revenues purportedly earned by SHE Beverage.

### 3.   Defendants falsely depicted the status of SHE Beverage's brewery

106.   In or around 2018 through 2020, SHE Beverage falsely promoted to prospective and actual investors that it had opened and was operating a brewery for its alcoholic beverages.

107.   For example, in or around October 2018, SHE Beverage sent an email message to its existing investors promoting the "grand opening" of its Lancaster brewery.

108.   As another example, on or about December 11, 2018, SHE Beverage issued a press release titled "SHE Beverage Company, Inc. Announces Acquisitions, Re-Brandings, and Public Offering."

109.   In the December 11, 2018 press release, SHE Beverage claimed that its locations included "a brewery and manufacturing site."

110.   The December 11, 2018 press release also stated that:

SHE Beverage Company *has grown* its brand to unbelievable heights within the last four years. ***Opening its 10,000 square foot brewery*** in Lancaster CA…" (emphasis added).

111.   SHE Beverage repeated the description of its purported brewery in seven additional press releases, from January 2019 through January 2020.

112.   Additionally, in press releases issued on or about January 22, 2019 and March 26, 2019, SHE Beverage described itself as "the female-owned and operated

craft beer brewery..." and the "female-owned and renowned craft beer brewery…"

113.   The 2019 Investment Guide listed a brewery as among SHE Beverage's assets.

114.   SHE Beverage's Form S-1 filed in January 2020, however, revealed that the company was "currently in process of constructing a brewery…."

115.   Contrary to its representations, SHE Beverage has never had an operational brewery.

116.   The only beer SHE Beverage sold to consumers came from contract brewers.

117.   As of at least January 2021, SHE Beverage had not installed the brewery equipment it had purchased.

118.   SHE Beverage had not, as of at least January 2021, completed the construction of the brewery.

119.   SHE Beverage had not, as of at least January 2021, obtained a certificate of occupancy for the brewery.

120.   Other than test batches, as of January 2021, SHE Beverage had not brewed any beverages at the site of its planned brewery.

121.   In January 2021, the California Department of Alcoholic Beverage Control indefinitely suspended SHE Beverage's small beer manufacturer license because, among other reasons, SHE Beverage had not engaged in commercial beer manufacturing.

122.   Reasonable investors would have found it important to their investment decision to know that SHE Beverage's brewery was not yet constructed, nor operational.

123.   Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that the company's statements regarding the status of its brewery were false and misleading.

124.   In the alternative, Rose, Shelby and Dirden failed to exercise reasonable

care as to SHE Beverage's statements regarding the status of its purported brewery.

### 4.     Defendants misrepresented the status of SHE Beverage's "proprietary" water formula

125.   Defendants falsely represented in the 2018 PPM that SHE Beverage sold bottled water made with a proprietary formula that cured cancer and spina bifida, had other health benefits (for heart health, fertility, aging, anxiety, PMS, and menopause) and was approved by the FDA.

126.   The 2018 Investment Guide also claimed that the company used a "proprietary process [that] allow[ed it] to transform water from any source…"

127.   Rose repeated these claims in a recorded investor meeting on or about June 2, 2019.

128.   Contrary to Defendants' representations, the bottled water sold under the SHE Beverage private label was not proprietary and was not FDA-approved.

129.   Prior to 2017, SHE Beverage purchased bottled water and antioxidant shots from a third party contractor, but neither product was sold to consumers.

130.   After 2017, SHE Beverage purchased bottled water from third party distributors, to sell as SHE Beverage-branded product.

131.   SHE Beverage did not make and sell its own proprietary water, but purchased commercially available bottled water from distributors for resale.

132.   SHE Beverage's bottled water has never had FDA approval.

133.   Reasonable investors would have found it important to their investment decision to know that SHE Beverage's water was not proprietary and did not have FDA approval.

134.   Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that the company's statements regarding the nature and status of its bottled water were false and misleading.

135.   In the alternative, Rose, Shelby and Dirden failed to exercise reasonable care as to their statements regarding the nature and status of SHE Beverage's bottled

water.

### 5. Defendants misrepresented the acquisition offers received for SHE Beverage

136.    In or around 2018, SHE Beverage represented to investors that it had received acquisition offers ranging from $120 million to $500 million.

137.    For example, the 2018 Investment Guide stated: "Alongside SHE Beverage Company's current growth, and public attention we know based upon recent offers to buy our brand (which range from 120 Million to 500 Million) that SHE Beverage Company's 'Public Announcement' will deliver the expectation to catapult our stock to a billion-dollar offer."

138.    On or about June 2, 2019, Rose touted the acquisition offers at a recorded investor meeting, identifying the $120 million offer as coming from a global spirits company ("Beverage Company A") and the $500 million offer as coming from a multilevel marketing company ("Network Marketing Company B").

139.    Defendants' statements concerning the purported offers to acquire SHE Beverage were false.

140.    Beverage Company A never made an offer or engaged in substantive negotiations to acquire SHE Beverage.

141.    Network Marketing Company B has no record of any association or communication with SHE Beverage, including of any offer to acquire SHE Beverage.

142.    Reasonable investors would have found it important to their investment decision to know that SHE Beverages had not received offers in the hundreds of millions of dollars from these two companies.

143.    Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that the company's statements regarding acquisition offers received for SHE Beverage were false or misleading.

144.    In the alternative, Rose, Shelby and Dirden failed to exercise reasonable care as to SHE Beverage's statements regarding purported acquisition offers.

### 6.    Defendants overstated the principals' investments in the business

145.    The 2019 Investment Guide stated that Rose, Shelby and Dirden had "personally invested [$]3.7 [m]illion foundational capital to create the brand, refine its packaging, build a trusted distribution network, and gain first-hand exposure to several industry barriers that routinely blind-side new brands."

146.    SHE Beverage records show that Rose, Shelby and Dirden invested less than $200,000.

147.    Reasonable investors would have found it important to their investment decision to know that the principals had substantially less money invested in the business as their "skin in the game."

148.    Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that they were overstating the amount of their personal financial investment in the company.

149.    In the alternative, Rose, Shelby and Dirden failed to exercise reasonable care with respect to statements of their personal financial investment in the company.

### 7.    Defendants falsely portrayed the imminence of the company's planned initial public offering

150.    During the offering, SHE Beverage made a series of materially misleading statements regarding the company's planned IPO, encouraging existing investors to invest additional monies while the company was still "pre-IPO" and the share price was $2.50 per share.  Defendants encouraged investors to purchase shares right away, stating that the stock price would be higher after the IPO.

151.    Defendants repeatedly created the false appearance that the company's IPO was imminent, variously, within days, weeks or months, as a means to encourage prospective or actual investors to invest their monies.

152.    For example, on or about February 8, 2018, in an email to investors signed by Rose, SHE Beverage stated that investors who invested "within the next

week or so will have the registered shares through the SEC."

153.   As another example, in or about October 2018, in a "notice to shareholders," SHE Beverage told investors the "IPO will open at $15.00, that's right! $15…," encouraging existing shareholders to buy stock at $2.50/share and refer friends and family to purchase at $5.00/share.

154.   As another example, on or about March 26, 2019, SHE Beverage issued a press release stating that it was "[d]ays away from its public offering."

155.   As another example, on or about April 24, 2019, a SHE Beverage email to investors, signed by Rose, stated that the company was "days away from ringing that bell."

156.   As another example, on or about May 14, 2019, a SHE Beverage email to investors stated that "market opening day" was "drawing near," and that investors had their "final opportunity" to purchase shares at $2.50 per share.

157.   On or about August 1, 2019, SHE Beverage again announced in a press release that it was "days away from going public and qualifying for NASDAQ."

158.   It was not until on or about January 2020, that SHE Beverage first filed a Form S-1 registration statement with the SEC for an initial public offering.

159.   The audited financial statements filed with SHE Beverage's Form S-1 on January 2020 only covered the fiscal years 2017 and 2018; the company did not file any audited financial statements for its fiscal year 2019.

160.   Reasonable investors would have found it important to their investment decision to know that SHE Beverage's IPO was not as imminent as described.

161.   Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that the company's statements regarding the imminence of the company's anticipated IPO were false and misleading.

162.   In the alternative, Rose, Shelby and Dirden failed to exercise reasonable care as to SHE Beverage's statements regarding its purportedly imminent IPO.

### 8. Defendants falsely portrayed SHE Beverage's acquisition of Elite Green

163. On or about September 9, 2018, SHE Beverage acquired Elite Green Solutions ("Elite Green"), a cannabis-related product company, for a combination of cash and stock.

164. On or about December 11, 2018, SHE Beverage issued a press release detailing its "incredible advancements," including SHE Beverage's acquisition of Elite Green, stating that the company had been "rebranded" as "The Pink Leaf."

165. SHE Beverage also promoted the Elite Green acquisition in investor emails.

166. For example, in an email to investors on or about 2019 signed by Rose soliciting additional investments in SHE Beverage, the company touted its plans for Elite Green (re-branded as the Pink Leaf), stating that it "recently hired its growers" for a cannabis grow farm and that it "will begin manufacturing CBD, THC, and Cannabis Products."

167. At the time it was acquired, Elite Green did not have any cannabis licenses or growing facilities and had not sold any product.

168. SHE Beverage did not obtain an independent valuation of Elite Green before acquiring it.

169. The 2018 PPM stated that the company is "not expected to have significant dealings with affiliates."

170. Prior to its acquisition by SHE Beverage, Elite Green was owned by Shelby's sisters.

171. SHE Beverage's Form S-1 filed in January 2020 revealed that the Elite Green subsidiary, subsequently renamed "Pink Leaf by SHE," as of 2020, had "no assets or operations, other than capitalized product formulations purchased by the Company."

172. Defendants failed to disclose to SHE Beverage investors that Elite Green

had no revenues, no licenses to sell cannabis and that it was acquired from related parties without any independent valuation.

173.   Reasonable investors would have found it important to their investment decisions to know that SHE Beverage's acquisition had no business operations and had not been independently valued prior to its acquisition, as well as that Elite Green was acquired from related parties.

174.   Defendants Rose, Shelby and Dirden knew, or were reckless in not knowing, that the company's disclosures regarding SHE Beverage's acquisition of Elite Green were false and misleading.

175.   In the alternative, Rose, Shelby and Dirden failed to exercise reasonable care as to SHE Beverage's disclosures regarding its acquisition of Elite Green.

**D.     SHE Beverage's Form S-1 Filing**

176.   On or about January 2020, SHE Beverage filed a Form S-1 registration statement with the SEC for an initial public offering.

177.   The S-1 offered approximately 6.8 million shares at $15 per share.

178.   Rose, Shelby and Dirden signed the Form S-1 on behalf of SHE Beverage.

179.   Rose, Shelby and Dirden assisted in preparation of the Form S-1 and reviewed it before it was filed with the SEC.

180.   Rose, Shelby and Dirden signed a management representation letter to SHE Beverage's outside auditor for purposes of the financial statements.

181.   The Form S-1 filing was the first time that SHE Beverage made its audited financial statements available to investors.

182.   In or about February 2021, the SEC issued an order declaring the registration statement abandoned.

**E.     Defendants Acted with Scienter and Failed to Exercise Reasonable Care**

183.   Defendants Rose, Shelby and Dirden acted with scienter, and failed to

exercise reasonable care.

184.   Rose was SHE Beverage's most senior executive and had ultimate decision-making authority for SHE Beverage.  She reviewed the disclosures made to investors during the offering and/or signed her name to them, including the offering memoranda, the investment guides, press releases, investor emails, and the company's Form S-1.  She spoke at investor meetings and directly solicited SHE Beverage's investors during the offering.  She worked directly with the consultant who assisted in the preparation of SHE Beverage's offering materials.

185.   Shelby was held out as SHE Beverage's most senior financial officer. She reviewed the disclosures made to investors during the offering and/or signed her name to them, including the offering memoranda, the investment guides, and the company's Form S-1.  She signed SHE Beverage investor emails as a member of SHE Beverage's executive team.  She attended investor meetings where offering materials were provided.  She worked directly with the consultant who assisted in the preparation of SHE Beverage's offering materials.

186.   Dirden was SHE Beverage's point of contact for SHE Beverage's investor relations. She reviewed the disclosures made to investors during the offering and signed her name to them, including the offering memoranda, the investment guides, investor emails, and the company's Form S-1.  She attended investor meetings where offering materials were provided, and directly solicited SHE Beverage's investors during the offering.  She worked directly with the consultant who assisted in the preparation of SHE Beverage's offering materials.

187.   Rose, Shelby and Dirden each had access to and control over SHE Beverage's bank accounts.

188.   Because Rose, Shelby and Dirden were SHE Beverage's principals, their scienter and failure to exercise reasonable care are imputed to SHE Beverage.

F.     **Defendants' Registration Violations**

189.   SHE Beverage's offering was not registered with the SEC, and no

exemption from registration applied to the offering.

190. SHE Beverage's 2017 OM and 2018 PPM asked prospective investors to attest that they were accredited investors.

191. Defendants did not take steps to verify prospective investors' financial sophistication or whether they were accredited investors.

192. SHE Beverage engaged in a general solicitation for investors.

193. SHE Beverage's offering included investors across numerous states.

194. SHE Beverage's investors included investors who were not accredited investors.

195. Defendants did not provide prospective investors with detailed financial information about the offering prior to their investments.

196. As the issuer of its shares, SHE Beverage offered and sold securities to prospective and actual investors.

197. Rose, Shelby and Dirden directly offered and sold SHE Beverage securities. Each communicated with investors concerning the offering, individually or as a member of the company's three-person executive team, by email, in-person, or by phone, and/or attended investor meetings where prospective and actual investors were provided SHE Beverage's offering materials.

198. Rose, Shelby and Dirden indirectly offered and sold SHE Beverage securities. Each was a substantial factor and a necessary participant in the SHE Beverage stock sales.

## FIRST CLAIM FOR RELIEF

### Fraud in the Connection with the Purchase and Sale of Securities
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### (against all Defendants)

199. The SEC realleges and incorporates by reference paragraphs 1 through 198 above.

200. Defendants SHE Beverage, Rose, Shelby and Dirden carried out a

fraudulent offering and made material misrepresentations and omissions to prospective and actual investors. Touting SHE Beverage as a successful beverage company, Defendants concealed that minimal funds were spent to purchase inventory, while Rose, Shelby and Dirden funneled investor monies to their personal expenses and withdrew it in cash. Defendants overstated and mischaracterized the company's revenues and their own investments in the company; advertised offers to buy the company they had never received; and falsely portrayed the company's products and the imminence of its IPO, all in an effort to continue bringing in investor monies that they spent in ways that were never disclosed to investors.

201.   By engaging in the conduct described above, Defendants SHE Beverage, Rose, Shelby and Dirden, and each of them, have, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

202.   Defendants SHE Beverage, Rose, Shelby and Dirden have, with scienter, employed devices, schemes and artifices to defraud; made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices or courses of conduct that operated as a fraud on the investing public by the conduct described in detail above.

203.   By engaging in the conduct described above, Defendants SHE Beverage, Rose, Shelby and Dirden have violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a), 240.10b-5(b)

& 240.10b-5(c).

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act

### (against all Defendants)

204.   The SEC realleges and incorporates by reference paragraphs 1 through 198 above.

205.   Defendants SHE Beverage, Rose, Shelby and Dirden carried out a fraudulent offering and made material misrepresentations and omissions to prospective and actual investors. Touting SHE Beverage as a successful beverage company, Defendants concealed that minimal funds were spent to purchase inventory, while Rose, Shelby and Dirden funneled investor monies to their personal expenses and withdrew it in cash. Defendants overstated and mischaracterized the company's revenues and their own investments in the company; advertised offers to buy the company they had never received; and falsely portrayed the company's products and the imminence of its IPO, all in an effort to continue bringing in investor monies that they spent in ways that were never disclosed to investors.

206.   By engaging in the conduct described above, Defendants SHE Beverage, Rose, Shelby and Dirden, and each of them, have, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

207.   Defendants SHE Beverage, Rose, Shelby and Dirden, with scienter,

employed devices, schemes and artifices to defraud; with scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and, with scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

208.   By engaging in the conduct described above, Defendants SHE Beverage, Rose, Shelby and Dirden have violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(2), & 77q(a)(3).

## THIRD CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (against all Defendants)

209.   The SEC realleges and incorporates by reference paragraphs 1 through 198 above.

210.   Defendants' offers and sale of SHE Beverage's stock were never registered with the SEC, nor were they subject to any exemption from registration. Defendants engaged in a nationwide offering using general solicitation; sold to unaccredited investors; and took no steps to verify the sophistication or accreditation status of prospective investors.  Defendants directly offered and sold SHE Beverage's stock and Defendants Rose, Shelby and Dirden also indirectly offered and sold the company's stock, as each was a necessary participant and a substantial factor in the company's millions of dollars in stock sales to its thousands of investors.

211.   By engaging in the conduct described above, Defendants SHE Beverage, Rose, Shelby and Dirden, and each of them, directly or indirectly, singly and in concert with others, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell

securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

212. By engaging in the conduct described above, Defendants SHE Beverage, Rose, Shelby and Dirden have violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c), 15 U.S.C. §§ 77e(a) & 77e(c).

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

### **I.**

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### **II.**

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants SHE Beverage, Rose, Shelby and Dirden, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Securities Act Section 17(a) [15 U.S.C. §77q(a)], and Exchange Act Section 10(b) [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### **III.**

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants SHE Beverage, Rose, Shelby and Dirden, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)].

## IV.

Order Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

## V.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VI.

Enter an order against Defendants Rose, Shelby and Dirden, pursuant to Sections 20(e) of the Securities Act, 15 U.S.C. § 77t(e) and Sections 2l(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), prohibiting each of them from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d).

## VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 14, 2021

*/s/ Amy Jane Longo*
Amy Jane Longo
Janet Rich Weissman
Attorneys for Plaintiff
Securities and Exchange Commission

COMPLAINT                    29