UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

| Present: The Honorable | Christina A. Snyder, United States District Judge |
|---|---|

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** (IN CHAMBERS) - MOTION FOR DISGORGEMENT, PREJUDGMENT INTEREST, AND CIVIL PENALTIES (Dkt. 94, filed on August 18, 2023)

## I.   INTRODUCTION

On September 14, 2021, plaintiff United States Securities and Exchange Commission ("SEC") filed this action against defendant SHE Beverage, Inc., ("SHE Beverage"), and defendants Lupe L. Rose, Sonja F. Shelby, and Katherine E. Dirden (the "Individual Defendants"). Dkt. 1 at 2 ("Complaint"). The SEC alleges that defendants violated Sections 5 and 17(a) of the Securities Act of 1993 ("Securities Act"), 15 U.S.C. §§ 77(e)(a), 77(e)(c), 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b5(a)-(c), by conducting a fraudulent offering between 2017 and 2019 and raising $15.4 million. Dkt. 1 at 3.

On November 15, 2021, defendants filed an answer to the complaint. Dkt. 13.

On October 21, 2022, Larson LLP ("Larson") filed a motion to withdraw as attorneys of record for defendant SHE Beverage. Dkt. 53. On October 31, 2022, the Court granted Larson's motion to withdraw. Dkt. 60. The Court ordered SHE Beverage to retain new counsel within 30 days, as SHE Beverage is a corporate entity and therefore may not appear *pro se* under Local Rule 83-2.2.2. Id. at 3.

On December 19, 2022, plaintiff requested that the Clerk of Court enter default against SHE Beverage for failing to retain new counsel in compliance with the Court's order. Dkt. 73. On December 21, 2022, the Court issued an order requiring SHE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

Beverage to show cause as to why Clerk's default should not be entered against it for failure to retain new counsel. Dkt. 75.

On January 6, 2023, defendant Rose requested additional time to find counsel for defendant SHE Beverage. Dkt. 77. On January 13, 2023, the Court granted Rose's request and gave thirty days to find new counsel for SHE Beverage.

On March 22, 2023, the Individual Defendants signed bifurcated consents in which they agreed to be subject to officer-and-director bars and to be permanently enjoined from future securities law violations. Dkt. 83-85. Under the consent judgments, the Individual Defendants are precluded from arguing that they did not violate the federal securities laws alleged in the Complaint in connection with the SEC's motion for disgorgement and/or civil penalties. Id. They additionally agreed that, for the purposes of such motion, the allegations of the Complaint would be accepted as true by the Court. Id. Defendants would be permitted to contest the amount of disgorgement or civil penalty amounts at a remedies hearing. Id. On March 30, 2023, the Court entered the proposed consent judgments against the Individual Defendants. Dkt. 86-88.

On March 30, 2023, SHE Beverage remained unrepresented, and the Clerk of Court entered default judgment against the company. Dkt. 89, 90.

On August 18, 2023, the SEC filed a motion for default judgment against SHE Beverage. Dkt. 93. On the same day, the SEC filed the instant motion for disgorgement, prejudgment interest, and civil penalties (the "motion"). Dkt. 94. On September 13, 2023, defendant Dirken informed the Court that she had not been served with the instant motion.

On September 18, 2023, the Court held a hearing. The Court granted the SEC's motion for default judgment against SHE Beverage. Dkt. 98. Because the Individual Defendants did not receive notice of the instant motion prior to the hearings, the Court continued the motion to allow them to file responses. Dkt. 97.

On September 20, 2023, defendant Rose filed a response to the SEC's motion for default judgment. Dkt. 100. On October 13, 2023, defendant Dirden filed a response to the SEC's motion for default judgment. Dkt. 101. On October 19, 2023, defendant Rose filed additional exhibits. Dkt. 102. Defendant Shelby did not file a response or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

opposition. On October 30, 2023, the SEC filed a reply addressing both filings. Dkt. 103 ("Reply").

On November 13, 2023, the Court held a hearing. Dkt. 105. At the hearing, defendant Rose noted that she had additional evidence showing business expenses that she contends were not included in plaintiff's calculations. The Court ordered defendants to produce all new documentation relating to alleged business expenses. Id.

On November 20, 2023, defendant Rose submitted her additional exhibits. Dkt. 106 ("Exh."). On December 11, 2023, the SEC filed a response and an accompanying declaration by its expert. Dkt. 107 ("Resp."), 107-1 ("Dec.").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Defendant SHE Beverage is a California corporation, incorporated in 2015, with its principal place of business in Lancaster, California. Dkt. 93-1, at 2. The company was promoted as a women-owned beverage manufacturer that sold various drinks aimed at female consumers. Dkt. 1 ¶ 15. According to SHE Beverage's offering documents, defendant Lupe Rose is the company's co-founder, owner, chief executive officer, president, and chair of the board of directors. Id. ¶ 16. Defendant Sonja Shelby is listed as the company's cofounder, owner, vice president, treasurer, vice chair, chief financial officer, principal financial officer, and a member of the board of directors. Id. ¶ 17. Defendant Katherine Dirden is listed as the company's chief operations officer, investor relations director, and a member of the board of directors. Id. ¶ 18. Together, the Individual Defendants constituted SHE Beverage's executive management from 2017 to 2019 (the "Relevant Period"). Id. ¶¶ 19-21.

The SEC alleges that, during the Relevant Period, SHE Beverage raised over $15 million from unregistered stock sales to more than 2,000 investors. Dkt. 1 ¶ 4. SHE Beverage offered and sold these securities using offering memoranda, investment guides, its websites, emails, and verbal communications. Id. ¶ 28. The Individual Defendants used their SHE Beverage email addresses to communicate with investors and signed their names on SHE Beverage statements, investment guides, and investor emails. Id. ¶¶ 23-24, 28, 42, 71.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'    JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

Between October 2017 and June 2018, the company offered and sold shares of common stock at $2.50 per share through an offering memorandum. Dkt. 93-1 at 4. In June 2018, SHE Beverage also offered and sold stock to investors through a private placement memorandum, which offered up to $25 million of SHE Beverage's common stock at $2.50 per share. Id. Investors purchased shares using cash, checks, credit cards, and electronic payment processors. Dkt. 1 ¶ 27. At times, defendants offered various deals to incentivize investment in SHE Beverage (e.g., two-for-one deals, referral bonuses). Id. ¶¶ 52, 66. Overall, SHE Beverage had more than 2,000 investors who lived in at least 38 states. Id. ¶ 67. Although defendants filed a Form S-1 registration statement in January 2020, the statement never went effective and was declared abandoned in 2021. Id. ¶¶ 176-82.

The SEC alleges that defendants falsely promoted the company to investors in a variety of ways. SHE Beverage and the Individual Defendants communicated to investors through offering memoranda, investment guides, websites, press releases, and investor emails. Id. ¶¶69-70. In these communications, the defendants overstated and mischaracterized the company's revenues. Id. ¶¶ 99-100. They claimed the company had launched its own brewery, even though the brewery had not yet been constructed. Id. ¶¶ 106-18. They claimed the company's bottled water was "proprietary" and "FDA approved," even though it was neither. Id. ¶¶ 125-33. They claimed the company had received acquisition offers for hundreds of millions of dollars, even though it had received no such offers. Id. ¶¶ 136-42. They claimed the company's planned initial public offering ("IPO") was imminent, even though they had not yet filed a registration statement with the SEC. Id. ¶¶ 150-60. They advertised the acquisition of a cannabis-related company but did not mention that it belonged to one of the Individual Defendants' sisters or that it had no independent valuation and no operations or sales. Id. ¶¶ 163-73. The Individual Defendants claimed to have personally invested millions into the company, even though they had made only modest personal investments. Id. ¶¶ 145-46. They also falsely represented to investors that they would use 30% of the offering proceeds to purchase beverage inventory, but actually spent only 2% on such inventory. Id. ¶¶ 72, 77.

Finally, the SEC alleges that the Individual Defendant's misappropriated investor funds. SHE Beverage did not initially tell investors that any proceeds would be used for executive compensation, and in 2018 it represented that only $3 million would be used

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

for sales, salaries, and marketing. Id. ¶ 89. However, the SEC alleges that the Individual Defendants spent at least $7.5 million in investor proceeds on personal expenses during the Relevant Period. Id. ¶ 90.

## III. DISCUSSION

### A. Defendants Rose and Dirden's Responses

The Individual Defendants have all signed consent judgments providing that:

> In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that she did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. Dkts. 83-85.

Nevertheless, in their responses, defendants Rose and Dirden challenge the factual allegations in the SEC's complaint. Dkts. 100-101. Defendant Rose characterizes this case as a "[w]itch-hunt" brought by the SEC on behalf of a disgruntled shareholder. Dkt. 100 at 7. She disputes the amount of money that SHE Beverage raised, the circumstances surrounding the construction of its brewery, the circumstances surrounding its planned IPO, her alleged misappropriation of money, and the amount of offering proceeds actually spent on beverage inventory. Id. at 2-4, 6. She attributes certain misleading statements to "human error" by hired consultants. Id. at 4. She also argues that certain missing funds were embezzled by a third party. Id. at 5-6. She concludes by requesting that the Court "dismiss[] this case in its entirety." Id. at 10. Defendant Dirden objects to being held jointly and severally liable and claims that she "should be considered differently and not the same as the other defendants." Dkt. 101 at 3. She also requests a six month stay to allow her to "meet the evidence and also deal with [an ongoing] DOJ investigation." Id. at 16. She argues a stay is warranted because of "the ongoing DOJ investigation," "the lack of access to all of the records," "[inability] to afford [counsel] or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

[her] own forensic accountant," and "[lack of] an opportunity to dispute the expert witness and reports." Id.

The SEC argues that these arguments are improper because, pursuant to the March 30, 2023, consent judgments, the Individual Defendants are precluded from disputing the factual allegations in the SEC's complaint. Reply at 4-5. To the extent that Rose's filing is construed as a motion to dismiss, the SEC argues that it should still be denied because Rose's statements "are not defenses to the fraud pled by the SEC in this case." Id. at 16. It also argues that the Court should deny Dirden's request for a stay because she "is simply attempting to re-litigate a request that the Court has already denied." In particular, on December 22, 2022, the Court denied a motion to stay these proceedings on the basis of the ongoing DOJ criminal investigation. Id. at 17; dkt. 76. The SEC argues that "[n]othing in this case has changed" since then, as "[n]o criminal charges have been filed against the Individual Defendants." Reply at 17.

The Court overrules all factual objections raised by defendants Rose and Dirden in their respective responses. The Individual Defendants have signed consent judgments agreeing not to contest the factual allegations of the SEC's complaint. None of the parties have suggested that the consent judgment should be set aside, and there does not appear to be any basis for doing so. As a result, the Individual Defendants are precluded from challenging the factual allegations of the SEC's complaint pursuant to the terms of the consent judgments. The Court also denies Rose's request to dismiss this case.

Similarly, the Court denies defendant Dirden's request for a stay. No criminal charges have been filed against the Individual Defendants at this time. Additionally, Dirden has not explained why she would be more likely or able to retain counsel should this case be stayed for six months.

### B.   Relief Sought by SEC

The SEC seeks several forms of relief. The Court addresses each form of requested relief in turn.

#### 1.   Disgorgement

District courts have "broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws." S.E.C. v. Platforms Wireless

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

Int'l Corp., 617 F.3d 1072, 1096 (9th Cir. 2010). Section 21(d)(7) of the Exchange Act expressly authorizes "any Federal Court" to order disgorgement in "any action or proceeding brought by the Commission under any provision of the securities laws." 15 U.S.C. § 78u(d)(7). The SEC has authority to seek disgorgement "that does not exceed a wrongdoer's net profits." Liu v. SEC, 140 S. Ct. 1936, 1940 (2020).

The amount of disgorgement "should include all gains flowing from the illegal activities" but need not be exact; a "reasonable approximation of profits causally connected to the violation" is sufficient. Platforms Wireless, 617 F.3d at 1096. The SEC "bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." Id. However, once it establishes a reasonable approximation, "the burden shifts to the defendants to demonstrate that the disgorgement figure was not a reasonable approximation." Id.

Here, the SEC's calculation of the appropriate disgorgement is based on evidence accumulated by Eric Poer, an expert retained by the SEC. Dkt. 94-3. The SEC has alleged that defendants raised $15.4 million through their fraudulent activities. Id. ¶ 13. It further alleges that "the entirety of the money raised from investors by the Defendants was the result of the Defendants' fraudulent scheme and the material misrepresentations in the Defendants' offering materials." Id. As a result, the SEC argues that "a deduction of business expenses is inappropriate in this case." Id. In the alternative, "should the Court determine that a deduction of business expenses is appropriate," the SEC has valued defendants' purported business expenses during the Relevant Period at $3,378,500. Id.; see also Dkt. 94-3.

In response, defendant Rose argues that SHE Beverage only raised $10 million rather than $15 million through its unregistered stock sales. Dkt. 100 at 3. Defendant Dirden argues that Poer's estimates are "based on a one-sided SEC investigation" and that she was not given the opportunity to provide "additional supporting documents on the business and expenses to account correctly for expenses." Dkt. 101 at 2. She specifically contends that Poer incorrectly classified "documented business expenses and[] documented reimbursements" as personal expenses. Id. She also asserts that "the award should be used to compensate victims, not to enrich the Government." Id. at 4. Additionally, she claims that the disgorgement amount should be reduced based on "funds still owed to [her] as an employee of the company that [she] did not and will not receive." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

Defendants Rose and Dirden also argue that the Court should consider an Asset Purchase Agreement between SHE Beverage and Urban Television Network Corporation ("URBT") when deciding the proper amount of disgorgement. SHE Beverage allegedly entered into this agreement on December 11, 2022. Dkt. 100 at 10; dkt. 101 at 1. The agreement was allegedly valued at $54 million dollars and would allow SHE Beverage Shareholders to trade their URBT shares at around $5 per share. Id. Defendant Rose claims that this deal "would provide every shareholder [every dime] they invested into SHE Beverage Company." Dkt. 100 at 10 (capitalization omitted).

In reply, the SEC argues that the defendants "provide no evidence that[] SHE Beverage [only raised] 10 million dollars or that the SEC did not account for . . . proceeds [spent] on business expenses." Reply at 10 (internal quotations omitted). It argues that, "[t]o the extent that Mr. Poer was able to identify sufficient evidentiary support that investor proceeds were used on purported business expenses," such expenses were already deducted in the disgorgement figure presented to the Court. Id. In addition, while "the National Defense Authorization Act does not require an award of disgorgement to be for the benefit of investors, the SEC [asserts that it] intends to establish a fair fund to distribute recovered funds to harmed investors." Id. at 10-11.

Furthermore, the SEC argues that the transaction with URBT would not make SHE Beverage shareholders whole. It contends there is no evidence supporting the $54 million valuation or the $5 per share price estimate. Reply at 5. Instead, URBT shares were allegedly last traded at "$.0001 per share in a very limited capacity in the over-the-counter market (colloquially known as the "penny stock" market)" and "is not currently trading in any capacity." Id. Meanwhile, SHE Beverage shareholders are required to pay $110 to URBT to "transfer" their shares. Id. The SEC further claims that "the only person who stands to gain from the Asset Purchase Agreement . . . is Lupe Rose . . . [who] stands to receive $50,000 in cash payments from URBT . . . while her shareholders receive nothing." Id. It further asserts that "URBT is itself likely engaging in fraud," as its founder is currently "a defendant in a separate SEC enforcement action." Id. at 6. Finally, SHE Beverage shareholders "cannot legally sell any URBT shares that they may receive," as there is "no record of any broker-dealing filing . . . to become a market maker on behalf of URBT investors." Id.

The Court finds that disgorgement in the amount of $12,021,500 is appropriate. It appears that defendants raised approximately $15,400,000 through their fraudulent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'   JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

activities, based on the estimates provided by the SEC's expert. While defendant Rose alleges that SHE Beverage only raised $10,000,000, she has not provided any evidence to support her claim. The Court also finds that the URBT transaction does not provide a basis for reducing the disgorgement amount, given that SHE Beverage shareholders will have no way of selling their URBT shares, will be forced to pay $110 to transfer their shares, and will receive shares previously valued at $.0001 each.

However, "courts must deduct legitimate expenses before ordering disgorgement under § 78u(d)(5)," unless the "the entire profit of a business or undertaking results from the wrongful activity." U.S. Sec. & Exch. Comm'n v. Russell, No. 22-55093, 2023 WL 4946603, at *1 (9th Cir. Aug. 3, 2023). Here, it appears that SHE Beverage generated at least some revenue from legitimate business. See Compl. ¶ 100 (alleging that "SHE Beverage . . . sold [just under] $263,000 of merchandise" in 2018); contra Russell, 2023 WL 4946603, at *1, *1 n.1 (finding that defendant's entire profit resulted from wrongful activity because the company "did not generate any revenue" and was potentially "never a legitimate business"). Accordingly, legitimate expenses should be deducted from the disgorgement amount.

The parties disagree on the value of SHE Beverage's legitimate expenses. The SEC has valued defendants' purported business expenses at $3,378,500. Dkt. 105. At the November 13, 2023 hearing, the Individual Defendants disputed the SEC's valuation and argued that the SEC's expert failed to consider other business expenses. Defendant Rose subsequently submitted twelve additional exhibits purportedly showing business expenses that the SEC failed to consider. Dkt. 106.

The Court finds that defendant Rose has not presented any evidence of legitimate business expenses that the SEC failed to consider. Exhibit A appears to show emails confirming that the Individual Defendants made personal investments in SHE Beverage in 2014. Id., exh. A. However, the SEC's expert "already considered each of these emails in arriving at [his] conclusions." Dec. ¶ 9.

Exhibit B appears to contain information regarding a third-party organization called West Swagg Music Group that defendant Rose allegedly owns. Dkt. 106, exh. B. However, nothing in this exhibit provides evidence of legitimate business expenses incurred by SHE Beverage, and there is no evidence that West Swagg Music Group provided products or services to SHE Beverage's beverage business. Dec. ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

Exhibit C appears to show Advisory Board Meeting materials discussing, among other issues, SHE Beverage's other lines of business. Dkt. 106, exh. C. Defendant Rose argues that these materials "show . . . why other company expenses" related to "non-beverage acquisitions" "should be accounted for[.]" Id. at 2. However, as the SEC noted in its response, the defendants' offering documents did not describe SHE Beverage as anything but a beverage company. See Dec. ¶ 11. Thus, investors would not expect SHE Beverage to use investor proceeds for lines of businesses unrelated to the company's beverage products, and such expenses are not considered legitimate business expenses.

Exhibit D appears to show that SHE Beverage retained an accounting firm to audit SHE Beverage's financial statements. Dkt. 106, exh. D. However, as the SEC noted, this retention letter alone does not prove that an audit was conducted because the audit itself was not provided. Dec. ¶ 12. Additionally, even if an audit was conducted, it appears from the terms of the retention letter that the audit was not intended to uncover fraudulent transactions like the ones at issue in this case. To the extent defendant Rose is seeking a deduction of the expenses incurred as a result of this audit, this letter alone does not prove that any expenses were actually paid.

Exhibit E appears to show that a third-party entity made certain amounts of beverage purchases and also includes revenue figures relating to event and beverage sales. Dkt. 106, exh. E. However, the SEC's expert found that the "beverage sales figures confirmed in this email and reflected in the revenue lead sheet agree to the beverage revenue detail that [he] ha[s] already reviewed . . . and agree to the amount of beverage revenue for which [he] gave [d]efendants credit." Dec. ¶ 13.

Exhibit F appears to show invoices from SHE Beverage's accounting firms. Dkt. 106, exh. F. However, to the extent that the invoices are offered as business expenses, it appears that the SEC has already considered and included accounting and auditing expenses that were validated based on its "review of SHE Beverage's bank statements and QuickBooks accounting records." Dec. ¶ 14.

Exhibit G appears to include SHE Beverage's 2018 federal and state income tax return forms. Dkt. 106, exh. G. However, it appears that the financial information reflected in these forms is consistent with the information in SHE Beverage's Form S-1 registration, which the SEC reviewed in its initial report. Dec. ¶ 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

Exhibit H appears to list journal entries purportedly showing that SHE Beverage had "related expenses and research and development for the pink leaf and other event space sales." Dkt. 106 at 2, exh. H. However, the SEC "was already provided access to and considered Pinnacle's audit working papers [including these types of journal entries] during the course of [its] review and analyses." Dec. ¶ 16.

Exhibit I appears to show SHE Beverage's payroll data from February 28, 2019, through February 7, 2020. Dkt. 106, exh. H. However, the SEC "was already provided and relied upon the same report" in its initial analysis and credited defendants for "at least $202,781" from this period. Dec. ¶ 17.

Exhibit J appears to contain excerpts from SHE Beverage's Form S-1. Dkt. 106, exh. J. Defendant Rose argues that these excerpts are "proof [that SHE Beverage] never said it [had] a full operational brewery." Id. at 2. However, pursuant to the terms of her signed consent judgment, defendant Rose has agreed not to contest the factual allegations in the SEC's complaint. To the extent that Exhibit J is presented as new evidence of legitimate business expenses, the SEC has "already considered and relied upon SHE Beverage's Form S-1 in arriving at [the] conclusions set forth in [its] Expert Report." Dec. ¶ 18.

Exhibit K appears to be SHE Beverage's QuickBooks accounting records from January 1, 2017, through May 3, 2022. Dkt. 106, exh. K. However, based on the spot checks conducted by the SEC's expert, these records "appear to be [the same] QuickBooks accounting records that [he] ha[s] already reviewed and considered" in his initial analysis. Dec. ¶ 19.

Finally, Exhibit S appears to include various marketing materials and pictures of the brewery facilities, corporate offices, SHE Beverage products, text messages with third parties, and cashiers' checks. Dkt. 106, exh. S. However, the SEC has already credited defendants with $2.6 million in legitimate business expenses associated with machinery and equipment purchases, inventory purchases, and employee payroll. Dec. ¶ 20. Defendant Rose has not provided enough information or context to establish that the text messages and associated checks are evidence of legitimate business expenses. Id.

Accordingly, the Court finds that SHE Beverage incurred $3,378,500 in legitimate business expenses which should be deducted from the $15,400,000 figure for a total disgorgement amount of $12,021,500.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

In conjunction with its request for disgorgement, plaintiff requests prejudgment interest. Dkt 94-1 at 15. Prejudgment interest may be awarded to ensure that the wrongdoer does not profit from the illegal activity. SEC v. Cross Financial Services, Inc., 908 F. Supp. 718, 734 (C.D. Cal. 1995). Indeed, an award of prejudgment interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity. SEC v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). The SEC requests prejudgment interest on the $12,021,500 from December 31, 2019 through September 14, 2021, totaling $738,774. Dkt. 94-1 at 17. See also dkt. 94-2 ¶ 2.

The Court finds that an award of prejudgment interest in the amount of $738,774 is appropriate, for a total amount of disgorgement and prejudgment interest of $12,760,274. See dkt. 94-2 ¶ 2.

The SEC also requests that SHE Beverage and the Individual Defendants be held jointly and severally liable because they acted in concert to perpetuate the fraud, and because the Individual Defendants used the SHE Beverage entity as a pass-through to misappropriate large amounts of investor funds. Dkt. 94-1 at 14.

In response, defendant Dirden argues that she should not be held jointly and severally liable based on the "government's subpoenaed records and the SEC's expert." Dkt. 101 at 3. In reply, the SEC argues that "Dirden played a key role in the fraud perpetrated from 2017-2019." Reply at 11. It contends that "Dirden, along with Rose and Shelby, was part of SHE Beverage's executive management," and that she additionally "was the primary point of contact for both prospective and actual SHE Beverage investors and was responsible for distributing offering materials to them." Id. at 11. Additionally, it asserts that "all three Individual Defendants are presumed to have used the investor proceeds for their joint benefit" because "the Defendants' bookkeeping did not provide for exact apportionment." Id. at 12.

The Court finds that joint and several disgorgement against SHE Beverage, defendant Rose, and defendant Shelby is appropriate based on the SEC's evidence. See SEC v. Smith, No. CV 20-1056 PA (SHKx), 2020 WL 6712257, at *3 (C.D. Cal. Oct. 19, 2020) ("Defendants shall be held jointly and severally liable for disgorgement because they acted in concert to perpetrate the fraudulent scheme."). Defendant Dirden has not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

alleged, with specificity, any reason why she should not be held jointly and severally liable. Accordingly, her request to not be held jointly and severally liable is denied.

    2.    <u>Civil Penalty</u>

The SEC also seeks an order imposing civil penalties on each of the Individual Defendants for violations of the Securities Act and the Exchange Act. Dkt. 94-1 at 17. Under the Securities Act and the Exchange Act, the amount of a civil penalty should be assessed by a court according to a three-tier system in light of the facts and circumstances of the case. <u>See</u> 15 U.S.C. §§ 77t(d)(2), 78u(d)(3). First tier penalties may be imposed for "each violation" of either Act; second tier penalties are appropriate where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" third tier penalties apply where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." <u>Id.</u>

"Like a permanent injunction, civil penalties are imposed to deter the wrongdoer from similar violations in the future; therefore the factors listed in <u>SEC v. Murphy</u> [ ] apply." <u>SEC v. Abacus Intern. Holding Corp.</u>, No. C 99-02191, 2001 WL 940913, at *5 (N.D. Cal. Aug. 16, 2001). As the SEC correctly notes, the <u>Murphy</u> factors include "(i) the degree of scienter involved; (ii) the isolated or recurrent nature of the infraction; (iii) the defendant's recognition of the wrongful nature of his conduct; (iv) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (v) the sincerity of his assurances against future violations." Dkt. 94-1 at 18 (citing <u>S.E.C. v. Murphy</u>, 626 F.2d 633, 655 (9th Cir. 1980)).

Here, the SEC seeks a third-tier civil monetary penalty. Dkt 94-1 at 18. Specifically, the SEC seeks an inflation-adjusted statutory amount of $669,687 against Rose, Shelby, and Dirden, individually.[1] Dkt. 94-1 at 19.

---

[1] The third-tier statutory penalty amount against natural persons for the alleged violations is $223,229 per violation. The SEC seeks a third-tier civil statutory penalty for each year of the misconduct from 2017-2019, for a total of $669,687 against each of the Individual Defendants. Dkt. 94-2 § 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

In response, defendant Dirden argues that the Murphy factors weigh against a third-tier penalty. She contends that she had no prior SEC warnings or judgments, that this was "an isolated incident," that she "already signed a bifurcated consent[] in which [she] agreed to . . . [an] officer-and-director bar," that she "do[es] not have a professional occupation [through which] future violations might occur," and she "currently [does not] have the financial means to pay[] $669,687." Dkt. 101 at 5.

In reply, the SEC argues that the defendants' violations were "egregious, recurrent, and involved a high degree of scienter." Reply at 13. It argues that Rose and Dirden used the SHE Beverage entity to "engage in a long-running fraud over the course of several years . . . result[ing] in a complete and total loss for more than 2,000 investors." Id. at 13. In particular, Dirden allegedly had "full knowledge of the fraud" when she "misrepresented to investors that SHE Beverage had an operational brewery," "[d]espite being aware that the brewery was never operational." Id. It contends that "the Individual Defendants have done nothing to recognize the wrongfulness of their conduct," as they "refused to substantively answer questions [during their depositions] and all asserted their Fifth Amendment privilege against self-incrimination." Id. Defendant Rose also "continues to argue that she did not engage in any misconduct, despite agreeing in her signed consent that she would not be permitted to dispute the allegations in the SEC's complaint." Id. at 14. The SEC asserts that the fact that the defendants signed consent judgments "has no bearing on the recognition of the wrongful nature of their conduct penalties under Murphy." See id. (citing S.E.C. v. Driver, No. 2:09-CV-03410-ODW, 2014 WL 6882854, at *1 (C.D. Cal. Dec. 4, 2014)). Additionally, the SEC argues that "the [d]efendants continue to defraud SHE Beverage investors by entering into an Asset Purchase Agreement with URBT, which requires SHE Beverage shareholders to pay additional funds . . . for purported shares in a defunct entity with no active business that is run by another individual who has been sued by the SEC." Id. at 14. Finally, it argues that "the ability of a defendant to pay a penalty is irrelevant" because "civil penalties are imposed to deter a wrongdoer from similar misconduct in the future." Id. at 16.

The Court imposes a second-tier civil monetary penalty on defendants Dirden and Shelby. While both Dirden and Shelby participated in the commission of a serious fraud, they both signed consent judgments acknowledging wrongdoing and agreed not to contest the factual allegations within the SEC's complaint. Both are subject to director bars, and neither holds a professional occupation where they are likely to commit future

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'    JS-6

| Case No. | 2:21-cv-07339-CAS-ASx | Date | December 14, 2023 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION V. SHE BEVERAGE COMPANY, INC., ET AL. | | |

violations of the securities laws. Shelby did not file an opposition, and Dirden's response did not deny any material allegation regarding the underlying fraud that was perpetrated. Thus, the Murphy factors weigh in favor of reducing the requested penalty from a third-tier to a second-tier penalty for Dirden and Shelby. The SEC's second-tier statutory penalty amount against natural persons for the alleged violations is $111,614 per violation, and the defendants are alleged to have engaged in misconduct for each year from 2017-2019. See U.S. Sec. Exch. Comm'n, Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (2023), https://www.sec.gov/files/civil-penalties-inflation-adjustments_1_1.pdf. Accordingly, the Court imposes a second-tier penalty of $334,842 against defendants Shelby and Dirden, individually.

However, the Court finds that a third-tier monetary penalty is appropriate for defendant Rose. Unlike the other Individual Defendants, Rose filed a response denying various factual allegations from the SEC's complaint. She alleges that the SEC's claims are "baseless, bizarre allegations," and contends that she "never misled or intentionally tried to mislead anyone." Dkt. 100 at 6, 9. Rose does not appear to recognize the wrongful nature of her conduct, and the Court is correspondingly unsatisfied by the sincerity of her assurances against future violations. Accordingly, the Murphy factors weight in favor of a third-tier penalty of $669,687.

## IV. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiff's motion for disgorgement and prejudgment interest. The Court orders SHE Beverage, Rose, Shelby, and Dirden to jointly and severally pay disgorgement in the amount of $12,021,500 and prejudgment interest in the amount of $738,774, for a total amount of $12,760,274. The Court also **GRANTS in part and DENIES in part** plaintiff's motion for third-tier civil penalties. The Court imposes second-tier civil monetary penalties of $334,842 against defendants Shelby and Dirden individually, and a third-tier penalty of $669,687 against defendant Rose.

IT IS SO ORDERED.

| | | 00 | : | 00 |
|---|---|---|---|---|
| | Initials of Preparer | | CMJ | |